IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE AIR CARGO, INC. LITIGATION TRUST | : | |
| | : | |
| v. | : | CIVIL NO. CCB-08-2002 |
| | : | |
| i2 TECHNOLOGIES US, INC. | : | |

. . . . . .o0o. . . . . .

**MEMORANDUM**

Now pending are a motion to quash filed by defendant i2 Technologies US, Inc. ("i2") (docket entry no. 35) and a motion to compel filed by the plaintiff Air Cargo Litigation Trust ("Air Cargo") (docket entry no. 37) related to a subpoena served on the Securities and Exchange Commission ("SEC") by Air Cargo. The subpoena requested documents related to the SEC's investigation of i2 and a 2005 civil enforcement action filed by the SEC in Texas. Oral argument was heard September 2, 2009. i2's motion for judgment on the pleadings has been withdrawn following Air Cargo's filing of a second amended complaint. For reasons explained below, the motion to quash will be denied and the motion to compel will be granted, subject to the approval of the District Court for the Northern District of Texas, Dallas Division.

Air Cargo is in bankruptcy; the Litigation Trust filed suit against i2 in December 2006. The second amended complaint filed September 24, 2009 alleges fraud and negligent misrepresentation, in addition to breach of contract, in connection with an agreement reached in August 2002 for i2 to provide and implement certain software (in particular "Transportation Manager") intended to assist Air Cargo in becoming a "Fourth Party Logistics Provider" in the air cargo industry. (2d Amd. Cplt. ¶ 12). Air Cargo planned to establish a nationwide lower cost more efficient "full truckload" service for its airline customers (*Id.*, ¶¶ 13-14), and chose i2 to provide software that would meet Air Cargo's needs. In summary, Air Cargo now says that i2

1

made false representations about the functionality and other aspects of the software during the spring and early summer of 2002 leading up to execution of the contract.

Air Cargo also explains that, according to an SEC "cease and desist" order entered against i2 in June 2004, i2 had been engaged in a corporate practice of maximizing "the immediate recognition of revenues from their software sales by recording revenue for sales of software that was not yet in existence or lacked key functionality required by its customers."[1] *Id.* at ¶ 63. The SEC investigation resulted in a significant restatement of earnings by i2 for 1998-2001 and the first three quarters of 2002. The SEC also filed a civil lawsuit in July 2005 (the "Brady litigation")[2] which alleged knowing misrepresentations by i2 officers about the functionality of various software.

In its motion to compel, Air Cargo seeks four categories of non-privileged documents arising out of the SEC investigation and the Brady litigation:

1. All documents that the Commission provided to Don Shafer, its expert in *SEC v. Brady, et al.*, No. 3:05-cv-01416 (N.D. Tex.) (the "Brady Litigation").

2. All documents that Don Shafer prepared for the Commission, including his expert report.

3. All deposition transcripts and exhibits in the Brady Litigation.

4. Reagan Lancaster's deposition transcript and exhibits from *i2 v. Reagan Lancaster,* Cause No. 01-7056 and *Reagan Lancaster v. i2 Technolgies*, Case no. 01-7060-E, Dallas County District Court.

The SEC believes it has most or all of the requested documents in its Fort Worth Regional Office. (Docket Entry No. 53). Air Cargo has offered to assume the time and cost of copying all the materials. (Docket Entry No. 54). The SEC has no objection to providing the documents other than the presence of a protective order issued in the Brady litigation, initially by Magistrate

---

[1] i2 did not admit the conduct alleged in the SEC Order.
[2] *SEC v. Brady*, No. 3:05-cv-0416D (N.D.Tex.)

Judge Irma C. Ramirez on January 25, 2006, and in amended form by District Judge Sidney A. Fitzwater on February 7, 2006. (SEC Opp'n, Ex. A.)                               .

After reviewing the misrepresentations alleged in the second amended complaint, it appears to me that the documents requested from the SEC are relevant and discoverable, as they may support the existence of a business practice at i2 within two years or less prior to August 2002 that is consistent with the fraudulent misrepresentations alleged by Air Cargo. This might in turn constitute or lead to admissible evidence of plan, motive, or intent. *See, e.g., United States v. Gold Unlimited, Inc.,* 177 F.3d 472, 486-89 (6th Cir. 1999); *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 517 (7th Cir. 1997); *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 530 (4th Cir. 1985); *Union Carbide Corp. v. Montell N.V.*, 28 F.Supp.2d 833, 842 (S.D.N.Y. 1998); *see also* Fed.R.Ev. 404(b).[3]

Directing production from the SEC, where the relevant documents are already segregated and likely may be obtained with less burden than by requiring them directly from i2 seems the more efficient choice. It is also significant that the SEC materials include documents provided to and prepared by its expert in the Brady litigation, Don Shafer, who is now retained by Air Cargo and could make use of the material for this litigation. Accordingly, I would now grant the motion to compel, and deny the motion to quash, but for the existence of the Brady protective order.

In support of its motion to compel, Air Cargo relies on *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495 (D.Md. 2000) for the factors to be considered when one court is requested to modify a protective order entered by another court in previous litigation:

1. "the nature of the protective order issued by the first court;"

2. "the identity of the party from whom discovery is sought;"

---

[3] What, if any, evidence will in fact be admissible will be determined if necessary at a later date.

3. "whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the plaintiffs if they are required to file a new action in the Texas court simply to seek modification of the Order issued there;" and

4. "whether it is possible to incorporate terms in [the second court's] own order which will further the protections originally ordered by the Texas court."

191 F.R.D. at 501.  Most of these factors weigh in favor of this court acting to grant the motion to compel, considering that a confidentiality order is in place for this litigation, that the Brady litigation terminated in 2007, and that many of the documents now held by the SEC were produced by i2 to the SEC.[4]  As to the first factor, however, it appears from the transcript of the hearing before Magistrate Judge Ramirez on January 25, 2006, that the Brady Protective Order was not agreed-upon or "ministerial," but rather was contested before the court. (Air Cargo Reply, Ex. 2).  In the interest of comity and courtesy, therefore, I will not now enter an Order on the motion to compel.  Rather than requiring Air Cargo to file a motion in the now-closed Texas case, I will first send the attached letter to Chief Judge Fitzwater, with a copy of this Memorandum, asking whether the court in the Northern District of Texas has any objection to my granting the motion to compel under these circumstances, or would prefer that a motion be filed by Air Cargo in the Texas case.  A final ruling will be deferred pending that response.

      January 22, 2010                                              /s/
Date                                                         Catherine C. Blake
                                                                        United States District Judge

---

[4] Any documents originally provided to the SEC by Deloitte & Touche, LLP, if turned over to Air Cargo, also would be protected by the confidentiality order in this case.